<hr />

## NEW YORK SUPERIOR COURT.

### CHARLES H. WINFIELD, respondent agt. SAMUEL B. POTTER, appellant.

It was *held* no error for the judge at the trial to deny a motion to *dismiss the complaint,* where the application was made *during the progress of the examination of a witness;* and where the application appeared in the double character of an *objection to evidence,* and on the ground that there was *no consideration in the agreement* upon which the action was brought.

It was also *held,* that the *written agreement* signed by the defendant, on which the action was brought in this case, taken together with an agreement signed at the same time by the plaintiff's assignor, was not void under the statute; construed together a sufficient *consideration* was expressed; and it could not be treated as an undertaking to *pay the debt of another.*

*Heard General Term, January,* 1863, *before* MONCRIEF *and* MONELL, *Justices. Decided January* 31, 1863.

FREDERICK F. BETTS & Co., on the 24th day of August, 1861, obtained an order or contract from the United States government for the manufacture and delivery to the government of five thousand sets of military equipments.

Frederick F. Betts & Co. proceeded under this order or contract, and manufactured and delivered to the government, at Governor's Island, a large portion of the goods agreed to be delivered under that contract, when, on the seventh of October, 1861, Frederick F. Betts & Co. sold out to the defendant all their assets, including the equipments so manufactured and delivered, and all their right, title and interest under their contract, for the sum of $8,000, which Potter had previously loaned them, and an agreement that Potter should pay the debts of Frederick F. Betts & Co.

At the time of the transfer of the property to Potter, on the seventh of October, the firm of Frederick F. Betts & Co. were indebted to H. B. Hart, for money which Hart had previously loaned them to carry on this business, in the sum of $1,125, for which Hart held the firm note; and, as collateral security for its payment, he also held at that time quartermasters' receipts for fifty cases of goods which the firm of Frederick F. Betts & Co. had delivered to the government under their contract.

On the tenth day of October, 1861, three days after Potter bought this contract and property of Frederick F. Betts & Co., and while the contract was in full force, for it was not canceled until the fourteenth of October, he applied to Hart to get these receipts, which Hart held as collateral security for the payment of the money he had loaned. Hart agreed to give Potter the collateral receipts, upon Potter's giving him a writing to pay the debt due from Frederick F. Betts & Co. to him, and Potter gave him the agreement upon which this suit is brought, and

took the receipts, and Hart agreed to aid Potter in getting the goods inspected to the best of his ability.

Without these receipts Potter could not have obtained possession of the property delivered, nor could he have obtained the certificates therefor.

The agreement upon which the suit is brought is as follows :

"NEW YORK, *October 10th*, 1861.

I, Samuel B. Potter, agree that whenever I receive a certificate or certificates from the government of the United States, or its officers, under or in pursuance of a contract between Frederick F. Betts & Co. and the government of the United States, for the making and delivery of five thousand sets of military equipments, for the whole or any portion of the sum agreed to be paid by said government, or the whole or any portion of the property so furnished, then I will deliver to said H. B. Hart, Esq., eleven hundred and twenty-five dollars, provided I receive certificates to that amount, which is in consideration that said Hart shall aid me in procuring the inspection and acceptance of said military equipments without charge, less disbursements.

$1,125.                         SAMUEL B. POTTER."

The agreement given by Hart to Potter to aid in getting the goods inspected is as follows :

"NEW YORK, *October 10th*, 1861.

I hereby agree to aid and assist Mr. S. B. Potter, the representative of F. F. Betts, to the best of my ability in getting his goods examined, as per contract with the United States government, for (5,000) five thousand sets military equipments made by said U. S. to Messrs. F. F. Betts & Co., without charge.         H. B. HART."

On the 14th of October, 1861, four days after Potter had given this agreement to Hart, upon which this suit is

brought, he gave up the order or contract of Frederick F. Betts & Co. with the government, which he purchased on the seventh of October, and had it canceled, and took an order directly to himself.

It does not differ from the order canceled in any respect, except running to Potter instead of Frederick F. Betts & Co. By its terms the government agree to take the goods already manufactured and delivered under the first order of Frederick F. Betts & Co., in fulfillment of "*the order*."

After Potter obtained this order, he expended between $3,000 and $4,000 to complete the goods already nearly finished under the first order, and in November, 1861, he received from the government a certificate for $17,412.50, which certificate included all the goods delivered to the government by Frederick F. Betts & Co., on their order, before they sold out to Potter, and also the fifty cases which Hart gave Potter the receipts for.

All the goods, therefore, for which Potter received a certificate, except between $3,000 and $4,000, were manufactured and delivered under the order of Frederick F. Betts & Co., viz., $14,000.

On the 26th of December, 1861, H. B. Hart assigned the contract upon which the suit is brought to Frederick B. Betts, which assignment was in writing.

On the 21st of April, 1862, Frederick B. Betts sold and assigned the contract in suit to the plaintiff in this action; the assignment was in writing.

This action was commenced on the 26th of April, 1862, and came on for trial on the eighth day of October, at a trial term, before the Hon. JOSEPH S. BOSWORTH, chief justice, and a jury. The jury found a verdict for the plaintiff for damages $1,195.83, and costs. A motion for a new trial was made upon the judge's minutes, and denied. The defendant thereupon appealed to the general term, from the judgment of $1,299.37 damages and costs, entered

November 26th, 1862, in favor of the plaintiff, and also from the order denying a motion for a new trial.

The defendant took a number of exceptions to the exclusion of testimony; to the decision denying his motion to dismiss the complaint, and to a portion of the charge of the judge.

> D. M. PORTER, *for defendant and appellant.*
> IRA D. WARREN, *for plaintiff and respondent.* ·

By the court, MONCRIEF, Justice. This is an appeal from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and also from an order denying a motion for a new trial.

There was no error in denying the motion to dismiss the complaint. The application was made during the progress of the direct examination of a witness, (the assignor of the plaintiff,) interrupting the orderly administration of justice in the trial of a cause. It appears in the double character of an objection to evidence which had been given, tending to show performance of the agreement on the part of the assignor of the plaintiff, (Hart,) and of a motion to dismiss the complaint on the ground that no consideration is named in the agreement. ·

The agreement was not void under the statute; taken together, the two instruments constituting the contract, one signed by the defendant and the other by Mr. Hart, a consideration is expressed. Besides, the agreement cannot, in a just sense, be treated as an undertaking to pay the debt of another; it partakes more of the character of the vendee of personal property. upon becoming the possessor of the instrument claimed to be indicia of title assuming and agreeing to pay to the extent of the alleged lien. The expression of opinion by the learned chief justice, in his charge to the jury, is well sustained by the testimony, and was not error: the question was submit-

ted to the jury. (*Coyles* agt. *Hurtin*, 10 *J. R.*, 85, 88; *Bulkly* agt. *Keteltas*, 4 *Sandf. R.*, 450, 454.) The case was fully and fairly submitted to the jury, who rendered a verdict for the plaintiff, doing, as I think, justice between the parties to the action. The other objections and exceptions are embraced by the views expressed with reference to the first exception, or so plainly untenable as not to require discussion.

The judgment and the order denying the motion for a new trial must be affirmed.